USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/10/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
TYRONE FELDER,                                    :
                                                  :      20-CV-7531 (VEC)
                                      Petitioner, :      S2 14-CR-546 (VEC)
                                                  :
                      -against-                   :      OPINION & ORDER
                                                  :
UNITED STATES OF AMERICA,                         :
                                                  :
                                      Respondent. :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      Petitioner Tyrone Felder, proceeding *pro se*, moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Pet., Dkt. 667.[1] On June 20, 2016, Petitioner was convicted on two counts: (1) conspiracy to distribute and possess with intent to distribute 280 grams or more of crack cocaine, and (2) brandishing firearms in connection with the drug conspiracy. *See* Verdict Sheet, Dkt. 446. On July 28, 2017, this Court sentenced Petitioner to 26 years' imprisonment. *See* Judgment, Dkt. 586. On September 14, 2020, Petitioner filed this Section 2255 petition (the "Petition"), seeking to vacate his sentence on the grounds of: (1) ineffective assistance of counsel (trial and appellate); (2) improper joinder of counts; (3) the procedural unreasonableness of his sentence; and (4) the insufficiency of the evidence to support his conviction. Upon careful review of Petitioner's arguments and the record, the Court finds that Petitioner's claims lack merit or are procedurally barred. Accordingly, the Petition is DENIED.

---

[1] All citations to the docket refer to Docket No. 14-CR-546.

1

## BACKGROUND

On February 8, 2016, Petitioner and co-defendant Kareem Martin were charged in a five-count superseding indictment.[2] S2 Superseding Indictment ("Indictment"), Dkt. 296. Count One charged Petitioner with conspiracy to distribute and possess with intent to distribute controlled substances — specifically cocaine, marijuana, and 280 grams or more of cocaine base — in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. *Id.* at 1–2. Counts Two and Three charged Petitioner with conspiracy to rob, and robbery of, individuals in a commercial establishment in the Bronx in violation of 18 U.S.C. § 1951. *Id.* at 2–4. Count Four charged Petitioner with using, carrying, possessing, and brandishing firearms in connection with the drug conspiracy charged in Count One and the robbery charged in Count Three, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (2). *Id.* at 4.

On June 20, 2016, following a one-week jury trial, Petitioner was convicted on Counts One and Four and acquitted on Counts Two and Three. *See* Verdict Sheet. At trial, the Government presented evidence that Petitioner was a leader of the Young Gunners gang ("YGz"), which sold drugs in River Park Towers (the "Towers"), a public housing project in the Bronx. *See, e.g.*, Trial Tr. at 76, 191–92, 309.[3] Members of the YGz worked together to sell drugs in the Towers by referring customers to each other, combining drugs to sell, bagging drugs for distribution, and warning each other about police presence. *See, e.g.*, *id.* at 190–93. Multiple witnesses testified that Petitioner personally sold drugs, collected proceeds from drug sales, and protected the YGz territory through threats of force. *See, e.g.*, *id.* at 238–43, 299–301, 303–08.

---

[2] Count Five applied only to Petitioner's co-defendant, Mr. Martin.

[3] *See* Dkt. 458 for Trial Tr. 1–93; Dkt. 460 for Trial Tr. 94–375; Dkt. 462 for Trial Tr. 376–603; Dkt. 464 for Trial Tr. 604–684; and Dkt. 466 for Trial Tr. 685–814.

2

The Court sentenced Petitioner to 26 years' imprisonment to be followed by 5 years' supervised release. *See* Judgment; *see also* Sent. Tr. at 32, Dkt. 589. At sentencing, the Court determined Mr. Felder to be a career offender because he was over eighteen at the time of the instant offense, the instant offense was a controlled substance offense, and he had at least two prior felony convictions for crimes of violence. *See* Sent. Tr. at 6, 12. The Court found that, under the Sentencing Guidelines, Petitioner had an offense level of 37 and a criminal history category of VI, yielding a Guidelines range of 360 months' to life imprisonment for Count One, plus a mandatory minimum sentence of 84 months' imprisonment for Count Four, to be served consecutively, for a total Guidelines range of 444 months' to life imprisonment. *See id.* at 12.

Petitioner appealed his conviction and sentence, arguing, first, that his sentence was procedurally unreasonable, and second, that the evidence was insufficient to demonstrate his knowing participation in a conspiracy to distribute narcotics. *See United States v. Felder*, 760 F. App'x 74, 76 (2d Cir.), *cert. denied*, 140 S. Ct. 250 (2019). On January 24, 2019, the Second Circuit affirmed Petitioner's conviction and sentence. *Id.* at 77.

Petitioner now seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Pet. The Government opposes the Petition and argues that Petitioner's motion should denied in its entirety. *See* Gov't Opp., Dkt. 673.

## DISCUSSION

### I.   **Legal Framework**

The Court notes at the outset that Petitioner is proceeding *pro se*, and "the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

Under 28 U.S.C. § 2255, a petitioner "may move the court which imposed [petitioner's] sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Relief under Section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Further, "[a]s a general rule[,] § 2255 petitioners may not raise on collateral review a claim previously litigated on direct appeal." *Abbamonte v. United States*, 160 F.3d 922, 924 (2d Cir. 1998).

## II.    Ineffective Assistance of Counsel

A claim for ineffective assistance of counsel will be granted only if a petitioner can show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms *and* that he was prejudiced by his counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687–96 (1984). This two-prong test is difficult to satisfy. *See United States v. Shi Hui Sun*, No. 09-CR-778, 2013 WL 1947282, at *4 (S.D.N.Y. May 8, 2013) ("[Ineffective assistance of counsel] is a difficult showing to make, as courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case . . . ." (cleaned up)). A petitioner cannot prevail on a claim of ineffective assistance of counsel "merely because in hindsight he thinks [his] counsel's trial strategy was inadequate." *United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986). The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

To satisfy the second prong of the *Strickland* inquiry, a petitioner must prove prejudice by showing "that there is a 'reasonable probability' that, but for the deficiency, 'the result of the proceeding would have been different.'" *Clark v. Stinson*, 214 F.3d 315, 321 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 694). In making this determination, the Court must consider the totality of the evidence that was presented to the jury. *Strickland*, 466 U.S. at 695. "Failure to make the required showing of *either* deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700 (emphasis added).

A claim of ineffective assistance of appellate counsel is also analyzed under the *Strickland* standard. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Mayo*, 13 F.3d at 533. In this context, appellate counsel is entitled to make strategic decisions and "need not (and should not) raise every nonfrivolous claim" on appeal. *Robbins*, 528 U.S. at 288. As a matter of strategy, appellate counsel "may select from among [colorable claims] in order to maximize the likelihood of success on appeal." *Id.*

### A. Trial Counsel Was Not Ineffective

Petitioner alleges that his trial counsel was constitutionally ineffective because counsel failed to adequately cross-examine the Government's witnesses at trial. *See* Pet. at 4, 13–17;[4] Reply at 1–2, Dkt. 676. Petitioner claims that several of the Government's witnesses — specifically Nenobia Washington, Corey McCollum, Jorge Figueroa, and David Pope — lied during their testimony and that his trial attorneys "had [an] ample amount of evidence to impeach . . . the government witnesses" but failed to do so. Pet. at 4, 13–17.

---

[4] Citations to the Petition refer to the pagination of the PDF document, given the absence of uniform pagination throughout.

Petitioner's ineffective assistance of trial counsel claim fails under both prongs of the *Strickland* test. As an initial matter, the record reflects that Petitioner's counsel *did* cross-examine McCollum, Figueroa, and Pope about several of the alleged inconsistencies highlighted in the Petition and that counsel cited these inconsistencies in his summation. *See, e.g.*, Trial Tr. at 152–64, 310–24, 498–507, 723–28. Moreover, decisions about whether to engage in cross-examination, as well as the scope of cross-examination, are "'strategic in nature' and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)). Petitioner states that he "debat[ed] back and forth" with his defense counsel during trial about cross-examining Ms. Washington, suggesting that it was a strategic choice not to cross-examine her. Pet. at 13. Although it may appear to Petitioner in hindsight that "alternative avenues of inquiry" may have been more effective, counsel's decision to limit cross-examination "does not evidence objectively unreasonable representation, for '[e]ven the best criminal defense attorneys would not defend a particular client the same way.'" *United States v. Rodriguez*, 68 F. App'x 237, 243 (2d Cir. 2003) (quoting *Strickland*, 466 U.S. at 689). Accordingly, because Petitioner has failed to overcome the "strong presumption" that defense counsel acted within the "wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, the Court need not reach the prejudice prong of the *Strickland* analysis, *id.* at 700.

Even if counsel's performance had been, in fact, deficient, Petitioner has failed to meet the "heavy burden" of proving prejudice under *Strickland*. *See United States v. Cohen*, 427 F.3d 164, 171 (2d Cir. 2005) (citation omitted). Analysis of the prejudice prong traditionally reflects the strength of the Government's case at trial. *See Strickland*, 466 U.S. at 695 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors

than one with overwhelming record support."). Here, the jury was presented with substantial evidence of Petitioner's guilt, and Petitioner has not shown that further cross-examination of the Government's witnesses would have changed the trial's outcome. In addition to the witnesses cited by Petitioner, the Government's proof at trial included, *inter alia*, the testimony of two undercover New York City Police Department Detectives; prior statements and admissions by Petitioner's co-defendant; physical evidence, including crack cocaine and marijuana purchased from Petitioner's co-defendant and other members of the conspiracy; and social media postings and other documents. Gov't Opp. at 2. Given the strength of the evidence introduced at trial, Petitioner's "conclusory assertions with respect to [counsel's] shortcomings and the likely effect of these alleged deficiencies on the jury's verdict" fail to satisfy *Strickland*'s prejudice prong. *United States v. Feyrer*, 333 F.3d 110, 120 (2d Cir. 2003). Accordingly, because Petitioner has demonstrated neither deficient performance nor prejudice, his claim for ineffective assistance of trial counsel is without merit.

### B. Appellate Counsel Was Not Ineffective

Prior to trial, Petitioner moved to sever the Hobbs Act robbery charges from the narcotics conspiracy charged in Count One pursuant to Federal Rules of Criminal Procedure 8(a) and 14. *See* Dkts. 336, 338. Judge McMahon (to whom the case was assigned at that time) denied Petitioner's motion, concluding that all counts were properly joined. *See* Opinion at 6–9, Dkt. 361. Petitioner asserts that his appellate counsel was ineffective for failing to appeal the district court's denial of Petitioner's pre-trial motion to sever. *See* Pet. at 5–6; Reply at 4. Petitioner argues that the robbery-related charges were improperly joined with the drug-related charge and that, even though he was acquitted of the Hobbs Act counts, he suffered prejudicial spillover because "the jury still h[ea]rd testimony that they should not ha[ve] h[ea]rd because the cases

7

were improperly joined." Pet. at 5. Petitioner's ineffective assistance of appellate counsel claim also fails under *Strickland*.

First, Petitioner has not overcome the "strong presumption" that appellate counsel acted within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Appellate counsel is free to choose strategically among viable claims in order to maximize the likelihood of success. *See Smith v. Murray*, 477 U.S. 527, 536 (1986) ("This process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." (cleaned up)). Here, appellate counsel raised two nonfrivolous issues on direct appeal: (1) that the evidence was insufficient to demonstrate Petitioner's knowing participation in a conspiracy to distribute narcotics, and (2) that Petitioner's sentence was procedurally unreasonable because the district court incorrectly determined that he was a career offender under the Sentencing Guidelines. *See Felder*, 760 F. App'x at 76. The severance issue Petitioner argues should have been raised is not "clearly stronger" than the claims raised because, among other reasons, it is meritless. *See Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.")). Accordingly, Petitioner fails to demonstrate that his appellate counsel's performance was deficient.

Petitioner's ineffective appellate counsel claim also fails under *Strickland*'s second prong because Petitioner's severance and prejudicial spillover arguments are meritless. Accordingly, there is no reasonable probability that raising the claim would have resulted in a different outcome on appeal. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) ("[P]etitioner's appellate counsel was not ineffective for failing to raise the meritless argument."). "[A] district

court order denying a Rule 14 motion is considered virtually unreviewable and will be overturned only if a defendant can show prejudice so severe that his conviction constituted a miscarriage of justice and that the denial of his motion constituted an abuse of discretion." *United States v. Yousef*, 327 F.3d 56, 150 (2d Cir. 2003) (cleaned up); *see also Feyrer*, 333 F.3d at 114 ("Rule 14 severance does not raise a question of law for our review; rather, its application is tested under the abuse of discretion standard."). Petitioner has failed to make such a showing.

Federal Rule of Criminal Procedure 8(a) permits joinder of offenses against a single defendant if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Even when joinder is proper under Rule 8(a), however, Federal Rule of Criminal Procedure 14 provides that a court may grant severance "[i]f the joinder of offenses . . . in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14. Motions to sever are "committed to the sound discretion of the trial judge," *United States v. Chang An-Lo*, 851 F.2d 547, 556 (2d Cir. 1988), and a defendant seeking severance shoulders the "extremely difficult burden" of showing that he would be so prejudiced by joinder that he would be denied a fair trial, *United States v. Casamento*, 887 F.2d 1141, 1149–50 (2d Cir. 1989).

Severance was not warranted in this case for the reasons stated in Judge McMahon's decision denying Petitioner's pre-trial motion to sever. *See* Opinion at 6–9. According to the Government, a "mean and method" of the narcotics conspiracy charged in Count One was robbing other drug dealers, including the robbery charged in Counts Two and Three. *See id.* at 9. Judge McMahon further noted that any risk of spillover prejudice could "easily and adequately

9

be addressed through an instruction by the Court, which is standard in this district in any case involving multiple counts, that the jury consider the evidence as to each count separately."[5] *Id.*

Furthermore, Petitioner has failed to show that he suffered any prejudicial spillover as a result of the joined counts. "A defendant bears an extremely heavy burden when claiming prejudicial spillover." *United States v. Griffith*, 284 F.3d 338, 351 (2d Cir. 2002) (citing *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988) ("The defendant must show that he or she suffered prejudice so substantial as to amount to a miscarriage of justice." (internal quotation marks omitted))). To determine whether a defendant was prejudiced by the introduction of evidence submitted in support of counts on which the defendant was acquitted, a court must determine: (1) whether the evidence introduced in support of the acquitted counts "was of such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant on the remaining counts," (2) "whether the dismissed counts and the remaining counts were similar," and (3) "whether the government's evidence on the remaining counts was weak or strong." *United States v. Hamilton*, 334 F.3d 170, 182 (2d Cir. 2003) (citing *United States v. Vebeliunas*, 76 F.3d 1283, 1294 (2d Cir. 1996)). Prejudicial spillover is unlikely to be found "where the record indicates that the jury was able to distinguish between counts . . . , and to assess separately the evidence pertinent to each." *Id.* at 183. "Partial acquittal of a defendant strongly indicates that there was no prejudicial spillover." *United States v. Morales*, 185 F.3d 74, 83 (2d Cir. 1999).

Here, Petitioner has not met his burden of showing prejudicial spillover. "The first prong of this test is not met where the evidence that the government presented on the [acquitted] counts was, as a general matter, no more inflammatory than the evidence that it presented on the

---

[5]  Indeed, the Court gave the jury precisely such an instruction. *See* Trial Tr. at 782.

remaining counts." *Hamilton*, 334 F.3d at 182 (cleaned up).  Here, there is no indication that the evidence admitted regarding the Hobbs Act robbery counts was more inflammatory than the evidence on the counts of conviction.  Under the second prong, the likelihood of prejudicial spillover is low "where the [acquitted] and remaining counts emanate from similar facts, and the evidence introduced would have been admissible as to both."  *United States v. Wapnick*, 60 F.3d 948, 954 (2d Cir. 1995).  The evidence at trial demonstrated, *inter alia*, that the YGz, of which Petitioner was a leader, controlled the territory in and around River Park Towers and robbed individuals who tried to sell drugs in that area without their permission, *see* Trial Tr. at 190–95, and that Petitioner committed several robberies of drug dealers, including a gun-point robbery that yielded money and marijuana, *see id.* at 247–48, 253.  Even without the Hobbs Act charges, much of the evidence in question would have been presented to the jury in the context of the narcotics conspiracy charged in Count One.  *See Morales*, 185 F.3d at 83 (rejecting prejudicial spillover claim where, *inter alia*, much of the evidence at issue "would have been admissible even if the reversed counts had never been charged").  Third, as the Second Circuit noted in affirming Petitioner's conviction, there was ample evidence of Petitioner's participation in the narcotics conspiracy.  *Felder*, 760 F. App'x at 77 ("The government's witnesses testified not only that Felder was a member of the YGz, but also that he personally sold crack and other drugs, collected drug proceeds from other YGz members, and helped to protect YGz' territory in the Towers.").  Finally, Petitioner's partial acquittal demonstrates "that the jury was able to distinguish between counts" and "to assess separately the evidence pertinent to each" in reaching its verdict.  *See Hamilton*, 334 F.3d at 183; *see also United States v. Jones*, 482 F.3d 60, 78–79 (2d Cir. 2006) (finding no prejudicial spillover where evidence was discrete as to each count and evidence supporting the convicted counts was "more than adequate"); *Morales*, 185 F.3d at 83

(finding no prejudicial spillover where jury acquitted defendant of some charges but convicted on others). Consequently, Petitioner has suffered no prejudice.

In sum, because Petitioner's severance and prejudicial spillover arguments are without merit, Petitioner has failed to show either that his appellate counsel's performance was deficient or that there is a "reasonable probability" that, but for his appellate counsel's failure to raise the improper joinder claim on direct appeal, "the result of the [appeal] would have been different." *Strickland*, 466 U.S. at 694. Accordingly, Petitioner's ineffective assistance of appellate counsel claim is without merit.

### III. Improper Joinder of Counts

Petitioner also raises his improper joinder of counts argument as an independent claim in his Petition. *See* Pet. at 5, 18. A defendant is generally "barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011). When a defendant has procedurally defaulted a claim by failing to raise it on direct review, however, the claim may still be raised in a habeas petition if the defendant can "demonstrate either cause and actual prejudice, or that he is actually innocent." *Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019) (cleaned up).

Petitioner claims that he did not raise this issue on direct appeal because his appellate counsel told him that he could not do so. Reply at 4. The Court finds it unnecessary to determine whether Petitioner has shown cause because he suffered no actual prejudice. *United States v. Frady*, 456 U.S. 152, 168 (1982) ("[W]e find it unnecessary to determine whether [petitioner] has shown cause, because we are confident he suffered no actual prejudice of a degree sufficient to justify collateral relief . . . ."). As noted *supra*, Petitioner's argument that the Hobbs Act count should have been severed from the narcotics conspiracy count is entirely

meritless. Accordingly, because Petitioner suffered no actual prejudice from the joinder of the counts, the claim fails.

## IV.  Procedural Reasonableness of Petitioner's Sentence

Petitioner argues that his sentence was procedurally unreasonable because he should not have been considered a career offender under the Sentencing Guidelines for two reasons: (1) his prior New York second-degree robbery conviction, for which he was adjudicated a youthful offender, should not have been considered a predicate offense under the Guidelines; and (2) his two prior New York second-degree robbery convictions were not "crimes of violence" and thus should not have been career offender predicates under the Guidelines. *See* Pet. at 8, 19.

### A.  Petitioner's Youthful Offender Claim is Procedurally Barred

Petitioner first contends that the district court erred when it determined that he was a career offender based on a New York State robbery conviction for which he was adjudicated a youthful offender. *See id.* at 8. "It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (quoting *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992)). This limitation encompasses issues expressly or impliedly decided on appeal. *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (citing *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)). Petitioner raised this precise argument on direct appeal, and the Second Circuit expressly rejected it, concluding that "where, as here, a defendant was tried and convicted in an adult court and served his sentence in an adult prison, his New York State youthful offender adjudication is a predicate conviction under the Career Offender Guideline." *Felder*, 760 F. App'x at 76. Petitioner is therefore prohibited from relitigating his youthful offender argument here. *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977) ("[O]nce a matter has been decided

13

adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under section 2255.").

### B. Petitioner's Prior New York Second-Degree Robbery Convictions Are Crimes of Violence Under the Sentencing Guidelines

Petitioner also argues that his prior New York second-degree robbery convictions do not qualify as crimes of violence under the Sentencing Guidelines. *See* Pet. at 19. Petitioner states that he is raising this claim for the first time in a collateral attack because he "wasn't aware of this issue until recent law/cases started deciding this issue." *Id.* at 9. Petitioner appears to seek relief in light of the Supreme Court's decisions in, *inter alia*, *Johnson v. United States*, 576 U.S. 591, 597 (2015) (holding that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2), is unconstitutionally vague), and *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019) (holding that the residual clause of 18 U.S.C. § 924(c) is unconstitutionally vague).

As an initial matter, this claim is procedurally defaulted because Petitioner could have raised it on direct appeal. As a result, Petitioner must show both "cause" for the default and "actual prejudice" that resulted from the alleged violation, or he must demonstrate that he is "actually innocent." *See Gupta*, 913 F.3d at 84 (cleaned up). There does not appear to have been any apparent impediment to raising this argument on direct appeal, and Petitioner fails to explain why he did not raise this claim earlier.[6]

Petitioner's claim is also legally baseless. As noted *supra*, the Court determined that Petitioner was a career offender under the Sentencing Guidelines based on his two prior New

---

[6] To the extent Petitioner contends that the ongoing development of case law in this area precluded him from raising this claim on direct appeal, the Court rejects that argument. *Johnson* was decided nearly two years before Petitioner's sentencing, and "[m]any courts in this Circuit have held that defendants' failure to challenge their conviction pursuant to *Johnson* on direct appeal precludes reliance on *Davis* in a collateral proceeding, because *Johnson* provided all of the 'tools to construct' a constitutional vagueness challenge to a conviction under the residual clause prior to *Davis*." *United States v. McCarron*, No. 15-CR-257, 2020 WL 2572197, at *5 (E.D.N.Y. May 20, 2020) (quoting *Mayes v. United States*, No. 12-CR-385, 2019 WL 6307411, at *2 (E.D.N.Y. Nov. 25, 2019)).

York second-degree robbery convictions.  *See* Sent. Tr. at 6; PSR ¶¶ 55–58, Dkt. 593.  There is no question that determination was correct because Petitioner's New York State second-degree robbery convictions qualify as crimes of violence under the force clause of the career offender guideline.  *See United States v. Brown*, 945 F.3d 72, 76 (2d Cir. 2019) (holding that defendant's New York second- and third-degree robbery convictions were "crimes of violence" under the Sentencing Guidelines); *United States v. Moore*, 916 F.3d 231, 240 (2d Cir. 2019) (holding that New York third-degree robbery is "categorically a crime of violence under the force clause of U.S.S.G. § 4B1.2(a)(1)"); *United States v. Pereira-Gomez*, 903 F.3d 155, 164–66 (2d Cir. 2018) (holding that "under New York law, . . . robbery in any degree is a crime of violence under the 'force clause'" of § 2L1.2 of the 2014 Guidelines, which relies on the same relevant definition of "crime of violence" used in § 4B1.2(a)(1)).

      Petitioner's argument ignores the controlling precedent discussed above because he wrongly assumes that *Johnson* and *Davis* apply to the career offender provision of the Guidelines.  *Johnson*, however, dealt with the ACCA and that statute's application to "conduct that presents a serious potential risk of physical injury to another."  *Johnson*, 576 U.S. at 593 (quoting 18 U.S.C. § 924(e)(2)(B)).  Here, Petitioner was not charged or sentenced under the ACCA.  Rather, the Court determined that Petitioner was a career offender pursuant to U.S.S.G. § 4B1.1(b)(1).  Unlike the ACCA, "the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause."  *Beckles v. United States*, 137 S. Ct. 886, 895 (2017); *see also Nunez v. United States*, 954 F.3d 465, 467 (2d Cir. 2020) (holding that "*Johnson* did not itself render the residual clause of the pre-*Booker* Career Offender Guideline unconstitutionally vague").  *Davis*, which addressed the residual clause of 18 U.S.C. § 924(c), is

15

similarly is inapposite. *See Davis*, 139 S. Ct. at 2324. The holdings in *Johnson* and *Davis* are thus wholly inapplicable to Petitioner's case.

Accordingly, Petitioner's claim asserting the procedural unreasonableness of his sentence is denied.[7]

### V.     Sufficiency of the Evidence

Finally, Petitioner's sufficiency of the evidence claim is procedurally barred because it was raised and rejected on direct appeal. *See Felder*, 760 F. App'x at 76 ("There was enough evidence to support the jury's finding that Felder participated in a narcotics conspiracy. . . . There also was enough evidence to support the jury's finding that Felder knew or reasonably foresaw that this conspiracy would involve 280 grams of crack cocaine.").[8] Accordingly, Petitioner is prohibited from relitigating the issue here. *See Natelli*, 553 F.2d at 7.

### CONCLUSION

For the foregoing reasons, the Petition is DENIED. The Court declines to issue a certificate of appealability, as Petitioner has not made a substantial showing of a denial of a constitutional right. *See Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). The Court

---

[7] Petitioner also claims that his "Hobbs Acts [were] not crimes of violence for career offender purposes." Pet. at 19. Because the Court did not consider the Hobbs Act robbery counts on which Petitioner was acquitted in calculating Petitioner's career-offender status, Petitioner's argument lacks merit. *See* Sent. Tr. at 6, 30–31.

[8] On appeal, Felder raised sufficiency of the evidence on the section 924(c) gun count only with reference to the sufficiency of the evidence relating to the narcotics conspiracy to which the gun count related. *See Felder*, 760 F. App'x at 76. In his Petition, Petitioner primarily makes the same argument, but he also states that: "[t]here was no evidence of me having a gun in connection with a narotics [sic] conspiracy. Anything that was said about me was related to fights about standing around loitering in a place were [sic] I and the people grow up in." Pet. at 20. To the extent Felder intends to raise this as a new issue, it is procedurally barred because it was not raised on appeal. *Thorn*, 659 F.3d at 231. He cannot be relieved of the procedural default because he has not demonstrated cause and actual prejudice or that he is actually innocent. Finally, even if it were not procedurally defaulted, it is meritless. There was evidence at trial that Felder committed several robberies of drug dealers, including a gun point robbery. Trial Tr. at 246-48, 253. That was more than sufficient for the jury to conclude that Felder used and brandished guns in connection with the narcotics conspiracy.

certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and permission to proceed *in forma pauperis* is therefore denied.

The Clerk of Court is respectfully directed to terminate the open motion at No. 14-CR-546, Dkt. 667, and to close the case at No. 20-CV-7531. The Clerk of Court is further directed to mail a copy of this Opinion to Mr. Felder.

**SO ORDERED.**

Date: August 10, 2021
New York, NY

_____
**VALERIE CAPRONI**
**United States District Judge**